**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250075-U

Order filed July 2, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* R.W., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| a Minor, | ) | Will County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-25-0075 |
| | ) | Circuit No. 19 JA 183 |
| v. | ) | |
| | ) | |
| SHERRELL C., | ) | Honorable |
| | ) | John Pavich, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Brennan and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not err when it found the respondent was an unfit parent.

¶ 2     The circuit court found Sherrell C., the respondent, to be an unfit parent and terminated her parental rights to her son, R.W. On appeal, the respondent argues the court erred when it denied her motion to change agency and found she (1) was unable to discharge parental

responsibilities due to mental impairment and intellectual disability, and (2) failed to make reasonable progress toward correcting the conditions that led to the minor's removal.

¶ 3                                                    I. BACKGROUND

¶ 4        The respondent is the biological mother of R.W. On November 13, 2019, the State filed a petition alleging that R.W. was neglected due to an injurious environment. The State also filed petitions as to the respondent's other minor children, M.C., D.J., T.J., and C.C. after it came to the attention of the Department of Children and Family Services (DCFS) that the children had been exposed to a physical altercation between the respondent and Joshua Carter, both of whom were intoxicated, and the respondent had drawn a knife. Temporary custody of the minor children was granted to DCFS on December 5, 2019. Lutheran Child and Family Services of Illinois was assigned to provide services and began an assessment of the respondent in February 2020. The respondent scheduled and missed several appointments to complete an integrated assessment but eventually completed an evaluation on May 4, 2020. After her assessment, the respondent was required to complete a domestic violence assessment, refrain from using intoxicating substances, and participate in a substance abuse assessment.

¶ 5        On September 1, 2020, the court found the respondent dispositionally unfit and made her children wards of the court, the minors' fathers having been found in default or found unfit. Visitation with the minor children was ordered "as therapeutically indicated" at the discretion of DCFS. The respondent was participating in services at that time but had not completed any treatment and did not have stable housing.  On October 18, 2021, a parenting capacity assessment was performed by a clinical psychologist and filed with the court, which indicated that the respondent was intellectually impaired and was temporarily living in her mother's apartment. According to the assessment, she lacked the skills to safely parent, was struggling to

2

maintain her own safety and security, and was unlikely to attain the skills necessary to care for her children within a reasonable timeframe due to intellectual disability. On May 10, 2022, the State filed a petition to terminate the respondent's parental rights to R.W. on the basis that, *inter alia*, she was unable to discharge her parental responsibilities and had failed to make reasonable efforts to correct the conditions which were the basis for removing the child.

¶ 6        On January 17, 2023, the State withdrew its petition after it came to light that a caseworker for Lutheran Child and Family Services who had worked on the respondent's case had provided false information to the court. A second parenting capacity assessment was ordered. Lutheran Child and Family Services instituted a new service plan recommending the completion of a substance abuse assessment and compliance with recommended treatment, random drug testing, domestic violence counseling, individual therapy, a parent education course, and obtaining suitable housing.

¶ 7        On January 21, 2023, the guardian ad litem in the case filed an emergency motion to suspend visitation between the respondent and R.W.'s brother, C.C., based on recommendations made by C.C.'s therapist and C.C.'s own wishes. On July 19, 2023, the respondent filed a motion to change agencies. She cited a lack of communication with the agency, insufficient visits, and insufficient support for visits. The court heard and denied the motion on July 26, 2023. On August 31, 2023, a second parenting capacity assessment was completed. The second parenting capacity assessment was completed by Dr. Gladys Croom, a clinical psychologist. Its findings were similar to those of the first assessment, concluding that the respondent did not have the cognitive or intellectual skills to ensure the safety and security of her children nor to independently parent them.

¶ 8        The State filed a second petition to terminate the respondent's parental rights on October 20, 2023. The State sought termination as to R.W. and C.C., alleging the respondent, *inter alia*, (1) was unable to discharge her parental responsibilities and (2) had failed to make reasonable progress toward the return of her children during a 9-month period after the initial adjudication of neglect between January 17, 2023, and October 17, 2023.

¶ 9        A hearing on the State's petition was held over six days between May 9, 2024, and January 17, 2025. Dr. Croom testified that she performed a parenting capacity assessment and a psychological assessment of the respondent. In preparation for her assessments, she reviewed the previous parenting capacity assessment as well as reports from DCFS, Lutheran Child and Family Services, and various treatment agencies. She also made clinical observations and performed several standardized psychological tests. Based on those tests and observations, Dr. Croom stated the respondent had a mild to moderate intellectual disability, undiagnosed neuro-cognitive disorder, dependent personality traits, and she suffered from unspecified depression, unspecified trauma and stressor-related disorder.

¶ 10        After thoroughly examining the respondent's history and interviewing the respondent, Dr. Croom concluded that the respondent was unable to meet minimum parenting standards, and she was incapable of discharging her parental responsibilities. According to her assessment, the respondent had difficulty remaining focused, exhibited memory problems, and failed to appreciate the dangers to which her children had been exposed. She had a history of failing to address the medical needs of her children, failing to attend routine appointments or administer medication. She also had difficulty recognizing and meeting her children's emotional needs. Although the respondent expressed a desire to see and spend time with her children, she was "unable to engage in interventions that could enhance protection and allow her children to safely

4

return to her care, due to her cognitive and intellectual deficits." Dr. Croom further stated it was unlikely the respondent's capacity to parent would change over time, given her disabilities.

¶ 11 On cross examination, Dr. Croom admitted she did not know why a second parenting capacity assessment had been ordered. She also stated that if there was "something wrong" with the previous report, she would want to know about it as it might impact her assessment. Dr. Croom was also asked whether the respondent's condition could be corrected so that she could parent in the future, and she opined that she believed some conditions could be corrected. However, Dr. Croom went on to clarify that the respondent's intellectual disability, along with her inability to "stay focused, organized, et cetera, I don't think that's going change." Dr. Croom stated that the respondent was inconsistent, disorganized, impulsive, and had difficulty getting to places. In sum, the respondent lacked "adaptive functioning skills," which prevented her from discharging her parental responsibilities.

¶ 12 Natalie Bauer, a program manager for Lutheran Child and Family Services, testified that the respondent had been provided with two services plans between January 17, 2023, and October 17, 2023, each recommending the same services, namely (1) the completion of a substance abuse assessment and compliance with recommended treatment, (2) random drug testing, (3) domestic violence counseling, (4) individual therapy, (5) a parent education course, and (6) obtaining suitable housing. Bauer stated that the respondent had initially been referred to Stepping Stones Community Services (Stepping Stones) for a substance abuse assessment, which she attended in April of 2023. Stepping Stones referred the respondent to Cornerstone Services (Cornerstone) for dual substance abuse and mental health treatment, and she completed an assessment there in June of 2023. Cornerstone in turn recommended inpatient treatment, and in September of 2023 the respondent entered a drug detoxification program at Silver Cross

Hospital. The respondent then began services with Cornerstone on October 16, 2023. However, she ultimately failed to complete either the substance abuse program or the mental health program during the relevant nine-month period.

¶ 13    The defendant also attended a parenting course. Bauer stated the respondent attended ten classes but failed to complete the required workbook and therefore failed to successfully complete the program. The respondent enrolled in a virtual domestic violence counseling program and attended three classes. However, she did not complete that course either. During the pendency of the case, the respondent was involved in a separate domestic violence incident involving her roommate in which the respondent was the alleged perpetrator. She was referred to a separate domestic violence class, which she also failed to complete.

¶ 14    At no time during the respondent's supervision by Lutheran Child and Family Services did she obtain suitable housing. Bauer testified that there was "a lot of confusion" over where the respondent was living. She provided several different addresses, and it was "difficult to get an answer from her on where exactly she was living." The respondent provided three different addresses to Cornerstone when she was asked for her address.

¶ 15    Bauer was responsible for bringing to light the false information provided to the court. A prior caseworker submitted a letter to the court that was not accurate, and Bauer investigated and verified that it was inaccurate. Bauer stated that the employee was terminated, and she personally ensured all information provided to Dr. Croom was accurate and did not include any information generated by that employee.

¶ 16    The respondent testified, noting that she had continued to visit the children. She completed a parenting class on July 9, 2024, and she completed inpatient drug treatment on

6

December 10, 2024. She believed that with help she could provide food, shelter, and clothing for her children.

¶ 17    The court entered a written decision on February 10, 2025. The court's decision extensively summarized the testimony adduced at the hearing and weighed the credibility of the witnesses. In particular, the court found Dr. Croom's testimony to be "very credible" and observed that her testimony was "compelling." The court also found Bauer to be "credible, compelling, and persuasive." Ultimately, the court granted the State's petition, finding the respondent was unfit. A best-interests hearing was held on February 13, 2025, at which the court found it was in the best interests of the minor to terminate the parental rights of the respondent. The respondent appealed.

¶ 18                                   II. ANALYSIS

¶ 19    On appeal, the respondent argues the circuit court erred by (1) denying her motion to change agency, (2) finding she was unable to discharge parental responsibilities due to mental impairment, and (3) finding she failed to make reasonable progress toward the child's return.

¶ 20    We note at the outset that the scope of our review is necessarily limited to the court's determination of the termination petition. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1066 (2004). In *Jordan V.*, the court clarified that preliminary orders "should be considered on review to the extent that those orders adversely affected [the] respondent's ability to make reasonable progress, if such evidence was considered by the trial court during the termination proceedings." *Id*. When a preliminary order does not meet those conditions, it is "irrelevant and not justiciable." *Id*. at 1067.

¶ 21    Here, the respondent challenges her request to change agencies, citing the agency's employment of an individual who provided false information to the court and problems with

7

visitation. However, as the respondent concedes, the State re-filed the petition to terminate parental rights after Lutheran Child and Family Services terminated the employee who provided false information to the court. Bauer testified that, following the discovery of the employee's conduct, she personally verified all information provided to Dr. Croom for the second parenting capacity assessment, and the respondent's request had no bearing on Dr. Croom's analysis. The respondent's visitation with her children was therefore irrelevant to the court's determination of the termination petition. The grounds for termination were the respondent's failure to make reasonable progress toward correcting the conditions that led to the children's removal and the respondent's inability to discharge her parental responsibilities due to mental impairment and intellectual disability. Neither ground required the court to consider the respondent's visitation with the children. Thus, the court's ruling on the request to change agency is not properly subject to review in this appeal. *Id.*

¶ 22 The involuntary termination of parental rights is governed by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2024)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2024)). *In re D.F.*, 201 Ill. 2d 476, 494 (2002). It requires a two-step process. First, the State must prove by clear and convincing evidence that the respondent is an unfit parent as that term is defined in section 1(D) of the Adoption Act. See 750 ILCS 50/1(D) (West 2024). Second, if the respondent is found unit, the court must determine if it is in the best interests of the child for the respondent's parental rights to be terminated. *In re D.F.*, 201 Ill. 2d at 495.

¶ 23 The State may proceed on multiple grounds in its petition. However, a finding of unfitness on any single ground under section 1(D) is sufficient to terminate parental rights. *In re C.W.*, 199 Ill. 2d 198, 217 (2002). The two grounds alleged by the state are described in section 1(D)(p) and section 1(D)(m). Section 1(D)(p) provides that a person is unfit if the State

8

establishes their "[i]nability to discharge parental responsibilities supported by competent evidence from a *** clinical psychologist of mental impairment, mental illness or an intellectual disability *** and there is sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period." 750 ILCS 50/1(D)(p). Section 1(D)(m) provides that a parent may be found unfit based on the "[f]ailure by a parent to *** make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." *Id.* § (D)(m).

¶ 24    We afford great deference to the court's findings of unfitness because the trial court is best positioned to view and evaluate the parties and weigh their testimony. *In re S.R.*, 2014 IL App (3d) 140565, ¶ 23. Therefore, we will not overturn a finding of unfitness on review unless it is contrary to the manifest weight of the evidence. *Id.* A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *In re Je. A.*, 2019 IL App (1st) 198467, ¶ 46. As noted above, a finding of unfitness on any single ground suffices to terminate parental rights, and we need not consider whether additional grounds were proven. See *In re J.W.*, 2024 IL App (1st) 231918, ¶ 35. We therefore focus our analysis on whether the court's finding of unfitness under section 1(D)(p) was against the manifest weight of the evidence, as we find it dispositive.

¶ 25    The uncontroverted testimony of Dr. Croom established the respondent suffered from a mental inability sufficient to preclude her from discharging her parental responsibilities. The respondent was observed to have a mild to moderate intellectual disability, undiagnosed neuro-cognitive disorder, and dependent personality traits. Additionally, she suffered from unspecified depression, unspecified trauma and stressor-related disorder. The respondent struggled to provide for her own safety and security, and, according to Dr. Croom's evaluation, her mental inability

9

rendered her incapable of safely caring for her children. Dr. Croom testified that the respondent's cognitive and intellectual impairments were not likely to change and, indeed, the record establishes that those conditions did not change between the first parenting capacity assessment and the second, a roughly two-year period during which the respondent never secured stable housing and only minimally engaged in services. Thus, the record shows that the State proved by clear and convincing evidence that the respondent has a mental impairment and her inability to parent will extend beyond a reasonable time.

¶ 26    We reach this conclusion despite the respondent's contention on appeal that Dr. Croom's assessment is unreliable because it might have changed her report to learn there was "something wrong" with the previous parenting capacity assessment. The respondent provides no evidence or argument supporting the vague allegation that anything was "wrong" with the first assessment, which was completed by an independent psychologist. The record does not suggest any significant discrepancies between the two reports, and we do not find any reason to overturn the circuit court's finding that Dr. Croom was both "compelling" and "very persuasive." The respondent also argues that Dr. Croom admitted that some of the conditions preventing the respondent from discharging her parental responsibilities could be corrected. However, Dr. Croom proceeded to clarify that many of the conditions preventing the respondent from parenting were unlikely to change, including her intellectual and cognitive inabilities.

¶ 27    The court's finding of unfitness was therefore not against the manifest weight of the evidence. The respondent does not challenge the court's best-interest finding. Accordingly, we affirm the judgment of the court.

¶ 28                                    III. CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 30     Affirmed.